IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Nashville December 1, 2015

**STATE OF TENNESSEE v. LARRY MALONE aka LARRY SALLIS**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 13-03316     James C. Beasley, Jr., Judge**

─────────────────

**No. W2015-00152-CCA-R3-CD  -  Filed May 5, 2016**

─────────────────

A Shelby County Criminal Court Jury convicted the appellant, Larry Malone, of theft of property valued $10,000 or more but less than $60,000 and vandalism of property valued $10,000 or more but less than $60,000, Class C felonies.  On appeal, the appellant claims that the evidence is insufficient to support the convictions.  Based upon the record and the parties' briefs, the appellant's conviction of felony theft is modified to theft of property valued $500 or less, a Class A misdemeanor.   The appellant's felony vandalism conviction is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are**
**Affirmed in Part and Modified in Part.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Phyllis Aluko (on appeal) and Michael Johnson (at trial), Memphis, Tennessee, for the appellant, Larry Malone.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

At trial, Michael Norman testified that his business, Advance Transmissions, was located at 2717 Lamar Avenue.  About 4:00 a.m. on January 25, 2013, Norman was

working and heard "a thumping sound, like footsteps" above his head. He said the noises "[s]ounded like a heavy person on top of the roof" and made him nervous. Norman got into his car and drove around the side of the building to see if anyone was on the roof. He could not see onto the roof but noticed a ladder propped against the building and telephoned the police. On cross-examination, Norman testified that he did not hear anything but the noises above his head and that he did not know how long the ladder had been leaning against the building.

Officer Jamal Holloway of the Memphis Police Department (MPD) testified that he responded to Norman's call and pulled up to the south side of the building. He saw an African-American male, who was the appellant, standing on a ladder, two or three rungs above the ground. Officer Holloway got out of his car, asked the appellant what was going on, and frisked the appellant. Officer Holloway felt a hard, metal object in the appellant's pocket. He reached into the pocket and pulled out a ratchet wrench with a socket attached, a screwdriver, identification, and several other items. When additional officers arrived, they searched the area and the roof but did not find anyone. Officer Holloway looked in an alleyway on the southwest side of the building and found several large coils on the ground. On cross-examination, Officer Holloway testified that when he first saw the appellant, he could not determine whether the appellant was going up or down the ladder.

Officer Nathaniel Vaughn of the MPD testified that he responded to a "prowler call" on Lamar Avenue on January 25, 2013. When he arrived, Officer Holloway had detained a suspect. Officer Vaughn saw a ladder leaning against the building, and he and two other officers went onto the roof. Officer Vaughn said that three or four air conditioner units were on the roof and that three of them had been damaged "as if someone had snipped them and stripped them, [taken] everything out." A pair of bolt cutters was on the roof next to one of the larger units. Officer Vaughn walked to the edge of the roof and saw air conditioner coils and copper piping on the ground.

Officer Melissa Mahan of the MPD testified that she responded to the scene and went inside Advance Transmissions to make sure no one had entered the business from the roof. When she came outside, Officer Holloway told her that he had found a suspect coming off the roof. Officer Mahan saw the appellant in Officer Holloway's patrol car and did not see anyone else on the roof or walking around the building. She went into an alley and saw copper coils on the ground.

Otha Lee Broome testified that he owned commercial real estate for a living, including the building at 2711 Lamar Avenue. The building contained 10,000 square feet of space, and five businesses were in the building. He said the building had five commercial air conditioner units: one ten-ton package unit, one five-ton package unit,

and three condensing units. The units were "like ten years old, little newer" and were operating properly prior to January 25, 2013. However, on January 25, someone climbed onto the roof and "stripped down" the units. Broome explained,

> Like the condensing unit, the package unit, it was all ripped up. Like the front part was pulled up and all the copper was snatched out. And then the condensing units it was just all tore up where it was just stripped down to nothing and all the copper was taken out. It was just trash.

He said that the copper and coils from the units were on the ground and that they were never returned to him. Broome notified his insurance company, paid his deductible, and received a check in the amount of $61,000 "and some change." He used the money to purchase five new units.

On cross-examination, Broome testified that he had owned the building "[a] little over ten years," that the building did not have air conditioning when he bought it, and that he installed the five units "as tenants moved in." After someone destroyed the units, Broome used the $61,000 to pay for the new units and their installation. Defense counsel asked if Broome knew the value of the items found on the ground, and Broome answered, "[W]ell he had tore them up, so I can't say . . . how much [he] would get for copper."

After Broome's testimony, the State rested its case. The appellant did not present any proof, and the jury convicted him as charged of theft of property valued $10,000 or more but less than $60,000 and vandalism of property valued $10,000 or more but less than $60,000, Class C felonies. After a sentencing hearing, the trial court sentenced the appellant as a Range II, multiple offender to ten years for each conviction. The trial court ordered that the appellant serve the sentences concurrently with each other but consecutively to a previous sentence.

## II. Analysis

On appeal, the appellant contends that the evidence is insufficient to support the convictions because the State failed to prove that he was the perpetrator, failed to prove the value of the stolen items, and failed to prove the value of the damaged air conditioners. The State argues that the evidence is sufficient. We conclude that the evidence is insufficient to support the appellant's conviction for Class C felony theft and modify it to misdemeanor theft. The appellant's conviction for Class C felony vandalism is affirmed.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. <u>Id.</u> Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. <u>State v. Hall</u>, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" <u>State v. Rice</u>, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting <u>Marable v. State</u>, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" <u>State v. Dorantes</u>, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting <u>State v. Hanson</u>, 279 S.W.3d 265, 275 (Tenn. 2009)).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). Vandalism occurs when a person "knowingly causes damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent." Theft and vandalism are Class C felonies if the value of the property is $10,000 or more but less than $60,000. Tenn. Code Ann. § 39-14-105(a)(4). Our criminal code defines "value" as

> (i) The fair market value of the property or service at the time and place of the offense; or

(ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense.

Tenn. Code Ann. §39-11-106(36)(A)(i)-(ii). "If property . . . has value that cannot be ascertained by the aforementioned criteria, . . . the property . . . is deemed to have a value of less than fifty dollars ($50.00)." Tenn. Code Ann. § 39-11-106(a)(36)(C).

Generally, "[a] witness may testify to the value of the witness's own property or services." Tenn. R. Evid. 701(b). It is the jury's prerogative to determine the fair market value of the items stolen. State v. Hamm, 611 S.W.2d 826, 828-29 (Tenn. 1981); State v. Michael Webster, No. M2012-00713-CCA-R3-CD, 2013 WL 2457181, at *6 (Tenn. Crim. App. at Nashville, June 5, 2013); State v. Alton Tappan, No. W2006-00168-CCA-R3-CD, 2007 WL 1556657, at *5 (Tenn. Crim. App. at Jackson, May 29, 2007). Moreover, the trial court instructed the jury in the instant case on how to determine the fair market value of the items. See State v. Rodger Watts, No. W2010-00705-CCA-R3-CD, 2011 WL 1220766, at *3 (Tenn. Crim. App. at Jackson, Mar. 31, 2011).

As to the appellant's claim that the evidence fails to show he was the perpetrator of the crimes, Michael Norman testified that he heard what sounded like footsteps on the roof of his business in the early morning hours of January 25, 2013. Concerned, he drove around the building. He did not see anyone on the roof but saw a ladder propped against the building and telephone the police. When Officer Holloway arrived, he saw the appellant standing on the ladder. He frisked the appellant and found a ratchet wrench with a socket attached and a screwdriver. Other officers went onto the roof and discovered that the five air conditioner units had been stripped of their copper pipe and coils. A pair of bolt cutters was on the roof, and copper pipe and coils from the units were on the ground. The officers did not find anyone on the roof or around the building. Taken in the light most favorable to the State, the evidence is more than sufficient to show that the appellant broke into the air conditioners and took the copper pipe and coils.

Regarding the value of the stolen property, the indictment charged the appellant with theft of property valued $10,000 or more but less than $60,000 for the copper pipe and coils taken from the five units. However, the State made no attempt to establish the value of the removed items. Defense counsel asked Broome, the owner of the air conditioners, for the value of the stolen copper pipe and coils, but he did not know their value. Accordingly, we must modify the appellant's conviction in count one to theft of property valued $500 or less, a Class A misdemeanor.

Regarding the value of the vandalized property, the indictment charged the appellant with vandalism of property valued $10,000 or more but less than $60,000 for

the damage to Broome's air conditioners. Broome testified that the five air conditioners were commercial units, about ten years old, and in working condition prior to January 25. Although he did not provide any information from which the fair market value of the destroyed units could be determined, he stated that his insurance company paid him $61,000, which he used to replace and install new units. We note that during closing arguments, defense counsel stated, "And [Broome] replaced the five AC units the value clearly was over ten thousand. I don't think that's really in dispute." The jury obviously agreed with counsel and concluded that the value of the five commercial air conditioners exceeded $10,000. Under these circumstances, we conclude that the evidence is sufficient to support the appellant's conviction for Class C felony vandalism.

### III.  Conclusion

Based upon the record and the parties' briefs, the appellant's conviction of felony theft in count one is modified to theft of property valued $500 or less, a Class A misdemeanor. The appellant's felony vandalism conviction in count two is affirmed.

_____
NORMA MCGEE OGLE, JUDGE